Colcock, J.
dissentiente. I am constrained, though with great reluctance, to differ from my brethren in this case. I had endeavoured to reconcile the decision on the ground that it is in accordance with the provision of the statute of frauds, which, I feel satisfied, never should have been departed from. But when I reflect that it is of more importance to a community that the rules of law should be settled than that they should be, in all respects, in accordance with the abstract principles of justice ; that in fact, the eátablished rule of law becomes, in such cases as the present, the rule of justice; I cannot subscribe to the opinion.
I take it to be the settled doctrine of the Court of Equity that possession, given with reference to a contract, is such part performance of it as will authorize the Court to compel a complete and specific performance. This doctrine is broadly laid down by Mr Mad-dock in his Treatise on Equity, p. 377, 80, and supported by cases almost innumerable. The case of Foxcrqft and Lyster is considered the leading case, but some other ground, it is said, was introduced into that case. The case, however, of the Earl of Aylesford, in Strange, 771, Geo. Í. rested solely on that ground, and it is recognized, in at least five cases, by Lord Redesdale, in *41 the Reports of Schoales and Lefroy. And, in the case of Clinan and Cook, he goes into a parallel between possession and payment of the consideration money or part of it, in which he assigns some reasons why possession ought to be considered as more conclusive of part performance than the payment of money. But the state of our country, and the various changes which the law on the subject of real estate has undergone, as well as the fact, w'ell understood here, that personal property is as valuable as real, and that possession gives a title to the one almost as soon as to the other, furnish, in my judgment, strong additional reasons why it should be so considered. The Court of Equity, in the case of Boykin v. Cantey, took this ground and, on the possession alone, decreed a specific performance.
If then there was an absolute right in the testator at the time of making his will, what is there to prevent such right from passing under the will % I am aware of the old doctrine founded on the word “ having” in the British statute, and that the cotemporaneous expositors of that statute have said it means nothing less than being seised in fee; and this may be granted without affecting the case : for we have two statutes of our own on the subject; the latter of which, from its phraseology, was, as I believe, expressly intended to avoid all the difficulty which has arisen in England from the technical construction of their statute. But even in England the rigid rule of construction has been relaxed, and the later cases expressly say, an equitable interest may be devised; and in our own Court of Equity, in the case of Cmger and Heyward, the Judge says, that it is now agreed that a mere possibility may pass by will.
The words of the act of 1789 are, when any one has “ any right or title,” he may devise; meaning, beyond all doubt, something less than a fee simple estate. I would ask, can it be said that the devisor had no *42 “right,” because he had no “title”1? Why did the legislature put the words in the disjunctive, if they did not mean a right without a title ? If Scott had died before the titles were made, could Watts or his heirs have taken the land ? Would they not have been compelled tó make titles; and what would then have become of the land, if Scott had not made a will*? Would it not have gone to his heirs ? It surely would. It was then a right, which might accrue to the benefit of his heirs, and could not pass to his devisees. With all the evils of having departed from the plain meaning of the statute of frauds staring me in the face, I cannot think of departing from the plain meaning of the act of 1798; and I am constrained to think that the testator had a right in this land which was devisable. If it were necessary to the support of this opinion, I think I am warranted, from the testimony, to conclude that the consideration money was paid when the possession was given; for the witness says, “ I do not know why the deed was not executed at that time.” Now, if he knew that the consideration money was not paid, he would have known why the deed was not made; and it was made in a short time after, and the title completed in the testator before he died.

Decree affirmed.